**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MUGWANEZA MUTWARE-BAKER,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-1360-R** |
| **FRED FIGUEROA, et al.,** | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Mugwaneza Mutware-Baker, a citizen of the Democratic Republic of the Congo proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 3). The undersigned set an expedited briefing schedule, (Doc. 6), and the Petition is at issue. For the reasons set forth below, the undersigned recommends that the Court **GRANT in part** the Petition, (Doc. 1), and order Respondents to provide Petitioner with a **bond hearing** within seven days or otherwise release him if there is no hearing within that time.

[1] Petitioner is housed at the Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 1, at 1).

[2] Page citations reference the Court's electronic case filing pagination.

## I. Factual Background

Petitioner, a citizen of the Democratic Republic of the Congo, entered the United States on or about October 30, 2024, without inspection or admission, and he was taken into custody the same day. (Doc. 1, at 4; Doc. 8, at Ex. 1). That day, ICE issued to Petitioner a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1)(A)(i). (Doc. 8, at Ex. 1). Petitioner expressed fear of returning to the Democratic Republic of the Congo and was examined for a credible fear determination on November 19, 2024. (Doc. 8, at 1; *id*. at Ex. 2). On December 10, 2024, ICE vacated its Expedited Removal Order and placed Petitioner into removal proceedings through the issuance of a Notice to Appear. (Doc. 8, at Ex. 2, at 1) (noting "an asylum officer has found [Petitioner] has demonstrated a credible fear of persecution or torture"). ICE charged Petitioner with being inadmissible (1) under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as someone who did not have valid immigration documents when applying for admission and (2) under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without admission or parole. (*Id.*)[3]

Petitioner applied for asylum and withholding of removal, and on September 30, 2025, an immigration judge denied asylum but granted withholding of removal under the Immigration and Nationality Act ("INA"). (Doc. 8, at Ex. 4; Doc. 1, at 5).[4] Petitioner was

---

[3] DHS updated the factual allegations with minor differences on May 30, 2025. (Doc. 8, at Ex. 3).

[4] Petitioner's Reply drew the undersigned's attention to factual misrepresentations by Respondents. (Doc. 9, at 1-2). Respondents incorrectly state that "[o]n October 10, 2025, an Immigration Judge denied all relief under Petitioner's application, and ordered him

ordered removed to the Democratic Republic of the Congo, but the immigration judge did not name an alternative country. (Doc. 8, at Ex. 4, at 5). Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") on October 21, 2025, (Doc. 8, at Ex. 5; Doc. 1, at 5), and it remains pending. EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last accessed Sept. 8, 2026). Therefore, the removal order is not yet final under 8 C.F.R. § 1241.1.

Petitioner has been in continuous ICE detention since he entered the United States on October 30, 2024 – 22 months as of the date of this Report and Recommendation. When Petitioner filed his Petition on June 3, 2026, (Doc. 1, at 8), he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. He remains detained there. *See* ICE Online

---

removed to the Democratic Republic of the Congo." (Doc. 8, at 2). This statement is contradicted by the Order of the Immigration Judge that Respondents provide as Exhibit 4 to the Response. Respondents also incorrectly state:

> On June 15, 2026, Petitioner filed a subsequent Petition for Writ of Habeas Corpus in the Eastern District of California based on his detention in the Central Valley Annex. (Exhibit 3 "EDCA Habeas Petition"). In his California Habeas Petition, Petitioner asserts an identical two counts for relief to the instant Petition. Namely, (1) violation of procedural due process under the Fifth Amendment, (Doc. 1 at 14-15; Exhibit 3 at 14), and (2) violation of substantive due process under the Fifth Amendment, (Doc. 1 at 15-16; Exhibit 3 at 15). As of the date of filing, no final determination has been made in the California Habeas Petition. Petitioner is currently scheduled for a Master Hearing on July 15, 2026, before the Adelanto Immigration Court. (Exhibit 4).

(Doc. 8, at 2-3). Notably, the actual Petition in this matter is only 8 pages long, not 16 or more; Respondents' Exhibit 3 is not an EDCA Habeas Petition; and Exhibit 4 does not reflect information about a Master Hearing. While the undersigned assumes that these obvious errors are the result of inadvertent drafting mistakes, Respondents' counsel is cautioned that incorrect factual assertions waste the Court's time and can be particularly detrimental to *pro se* petitioners.

Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Sept. 8, 2026).

Petitioner does not allege he requested a bond hearing. Such a request, though, would likely be futile because all immigration judges are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds those non-citizens who entered the country without admission or parole are ineligible for a bond hearing.

## II. Petitioner's Claims and Respondents' Responses

Petitioner asserts two grounds in his Petition:

- **Ground One: Violation of the Fifth Amendment**. Petitioner alleges his detention of 19 months (at the time of filing) in conditions meant for criminal punishment has become unconstitutionally prolonged. (Doc. 1, at 6).

- **Ground Two: Violation of Due Process**. Petitioner alleges that "being incarcerated for 19 months without any additional procedur[al] protection has inflicted sever[e] mental and emotional distress" and deprived him of his liberty. (*Id.*)

Petitioner asks the Court to order his immediate release from detention, "or in the alternative, order a bond hearing at which the government must prove by clear and convincing evidence that [his] continued detention is necessary." (*Id.* at 7).

Respondents contend Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1). (Doc. 8, at 3-4). Respondents further contend that the *Mathews* factors for analyzing due process violations do not support habeas relief for Petitioner. (*Id.* at 4-7).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## IV. Analysis

### A. Section 1225(b)(1) Applies to Petitioner's Detention.

The section of the INA that governs non-citizens detained at the border is 8 U.S.C. § 1225. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). Section 1225(b)(1) "governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1161 (D.N.M. 2014) (citing § 1225(b)(1)).

> Aliens who have not been admitted or paroled into the United States and who have not satisfactorily demonstrated to an immigration officer that the alien has been physically present in the United States continuously for the prior two years are subject to expedited removal without further hearing or review, unless the alien indicates an intention to apply for asylum or a fear of persecution, at which point the immigration officer shall refer the alien for an interview by an asylum officer.

*Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)-(iii)).

Section 1225(b)(1)(B)(ii) further requires that, if an asylum officer determines a non-citizen has a credible fear of persecution, the non-citizen shall be detained for further consideration of the application for asylum. The Notice to Appear here reflects an asylum officer found Petitioner had "demonstrated a credible fear of persecution or torture," and ICE vacated his Expedited Removal Order. (Doc. 8, at Ex. 2). As such, Petitioner is being detained pursuant to § 1225(b)(1)(B)(ii) and is not statutorily entitled to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (explaining the "plain meaning" of § 1225(b)(1)(B)(ii) "is that detention must continue until immigration officers have finished 'considering' the application for asylum") (quoting § 1225(b)(1)(B)(ii) (citation modified)).

**B. Petitioner Is Entitled to A Bond Hearing Because His Prolonged Detention Violates His Substantive Due Process Rights.**

Petitioner alleges due process violations based on his prolonged detention in ICE custody without "procedur[al] protection." (Doc. 1, at 6). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Indeed, this protection applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Id.* at 690. Under these due process principles, civil immigration detention is constitutional only in "certain special and narrow nonpunitive circumstances,"

and it must "bear[] [a] reasonable relation to the purpose" for which the non-citizen was detained. *Id.* (citation and quotation omitted). The Supreme Court has identified those purposes as mitigating the risk of danger to the community and preventing flight. *Id.* at 690-91; *see also Demore*, 538 U.S. at 527-28.

In *Demore*, a non-citizen subject to mandatory detention under a similar statute, 8 U.S.C. § 1226(c), claimed his detention "violated due process because [ICE] had made no determination that he posed either a danger to society or a flight risk." 538 U.S. at 514. The Supreme Court held that detention of non-citizens "during removal proceedings is a constitutionally permissible part of" the removal process. *Id.* at 531. Later, in *Jennings v. Rodriguez*, the Supreme Court ruled that as a matter of statutory construction, § 1225(b)(1)(B)(ii) mandates detention while a non-citizen's asylum claims are pending. 583 U.S. at 299, 302-03. However, the Supreme Court explicitly reserved ruling on whether prolonged detention under § 1225(b) could violate due process. 583 U.S. at 312.

Neither the Supreme Court nor the Tenth Circuit has subsequently ruled on the constitutional issue of prolonged detention without a bond hearing under § 1225(b). "Since *Jennings*, courts have 'sharply disagreed about the reach of the Due Process Clause as applied to arriving aliens.'" *Giraldo Nieto v. Ceja*, --- F. Supp. 3d ---, 2025 WL 4087626, at *6 (D. Colo. June 12, 2025) (citation modified) (quoting *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020)). The post-*Jennings* cases from this Circuit considering due process challenges to prolonged detention under § 1225(b)(1) illustrate this strong disagreement. Some courts have found prolonged detention under § 1225(b)(1) does not violate due process because non-citizens are entitled only to the process provided

to them by statute and because detention during removal proceedings is non-punitive. *See Giraldo Nieto*, 2025 WL 4087626, at *7-9; *Doe v. Bondi*, No. 25-cv-2712, 2025 WL 3516292, at *6-10 (D. Colo. Nov. 4, 2025) (same).

Other courts in the Circuit have concluded detention under § 1225(b)(1) without a bond hearing does violate due process when it becomes so prolonged as to be constitutionally unreasonable. *See Ali X v. Bondi*, No. 26-cv-1367, 2026 WL 1857825, at *6 (D. Colo. June 29, 2026) ("[T]he Court concludes that Petitioner's detention has become constitutionally unreasonable and continued detention without any individualized custody determination violates procedural due process."); *Marquez v. Warden*, No. 26-cv-1527, 2026 WL 1557180, at *2 (D.N.M. June 2, 2026) ("[U]nder the circumstances of this case, Petitioner's indefinite, ongoing detention of more than seven months, with no reasonably foreseeable end in sight . . . is punitive and a violation of her Fifth Amendment substantive due process rights."); *Mardanpour v. Warden*, No. 26-cv-550, 2026 WL 963164, at *6 (D.N.M. Apr. 9, 2026) ("Petitioner's indefinite, ongoing detention exceeding fourteen months is punitive and therefore a violation of Petitioner's Fifth Amendment substantive due process rights.").[5]

No Judges in this District have directly addressed whether prolonged detention without a bond hearing of a non-citizen detained at the border under § 1225(b)(1) violates substantive due process. In the absence of such authority, the undersigned recommends

[5] While district courts in the Tenth Circuit are split on this question, "[t]he majority of courts who have considered this issue have determined that the due process protections recognized in *Zadvydas* prohibit indefinite detention under § 1225(b)(1)(B)(ii)." *Leonteva v. Noem*, --- F. Supp. 3d ---, 2026 WL 711766, at *5 (S.D. Ind. Mar. 13, 2026).

looking to cases considering similar challenges by non-citizens detained under § 1226(c). *See*, *e.g.*, *Shansiev v. Warden, Folkston ICE Processing Ctr.*, No. 25-CV-223, 2026 WL 1738121, at *10 (S.D. Ga. June 16, 2026) ("District courts considering the constitutionality of prolonged § 1225(b) detention frequently employ a balancing test" that "is sometimes borrowed from cases related to § 1226(c) detainees."); *Gevorg v. Warden of Golden State Annex Det. Facility*, No. 25-cv-992, 2025 WL 3496436, at *6 (E.D. Cal. Dec. 5, 2025) (explaining how "multiple United States district courts have found" due process violations under § 1225(b) by using "a myriad of overlapping balancing tests, often initially conceived and applied in the context of a lawful permanent resident detained under § 1226(c), to determine whether detention of an arriving alien under § 1225(b) without a bond hearing has become so prolonged that it violates petitioner's due process rights under the Fifth Amendment"). Section 1226(c) requires the Secretary of Homeland Security to detain non-citizens who have committed certain criminal offenses pending the disposition of their removal proceedings. In *Jennings*, the Supreme Court observed the mandatory detention provisions of §§ 1225(b) and 1226(c) operate in substantially the same manner. 583 U.S. at 303.

In *Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3021514 (W.D. Okla. Mar. 9, 2023) (*Jalloh I*), Judge Russell observed,

> District courts throughout the Tenth Circuit have applied a multi-factor test in assessing whether detention pursuant to § 1226(c) has been unconstitutionally prolonged:
>
> > (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays

> in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id*. at *2-3 (quoting *Viruel Arias v. Choate*, No. 22-CV-02238, 2022 WL 4467245, at *2 (D. Colo. Sept. 26, 2022) (quoting *Singh v. Choate*, No. 19-CV-00909, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019)); *see also Juarez v. Choate*, No. 1:24-CV-00419-CNS, 2024 WL 1012912, at *6 (D. Colo. Mar. 8, 2024), *appeal dismissed* (June 24, 2024); *Vital v. Baltasar*, No. 26-CV-01625-NYW, 2026 WL 1965075, at *3 (D. Colo. July 7, 2026); *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *11-13 (D. Colo. Dec. 17, 2025); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 939-42 (D. Colo. 2025).[6] Ultimately, Judge Russell concluded those factors weighed in favor of finding a due process violation and ordered the government to provide the non-citizen with a bond hearing. *Jalloh v. Garland*, No. CIV-22-908-R, 2023 WL 3690252, at *3 (W.D. Okla. May 26, 2023) ("*Jalloh III*") (adopting *Jalloh v. Garland*, 2023 WL 3690259 (W.D. Okla. Apr. 26, 2023) (R&R) ("*Jalloh II*")).

Judge Russell's approach to due process claims for prolonged detention under § 1226(c) aligns with how other courts have assessed such claims regarding prolonged detention under § 1225(b). *See, e.g.*, *Ali X*, 2026 WL 1857825, at *5 (applying in a case of prolonged detention under § 1225(b) the "six-factor test" for prolonged detention under

---

[6] These factors share much in common with the Third Circuit's multi-factor analysis for substantive due process challenges to prolonged detention. *See German Santos v. Warden Pike Cnty. Corr. Facility*, 956 F.3d 203, 211 (3d Cir. 2020) (analyzing duration of detention, likelihood of continuing detention, reasons for the delay, and difference from criminal punishment).

§ 1226(c) in *Singh v. Choate*, No. 19-cv-909, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019)); *Khasanova v. Rokosky*, No. CV-26-763, 2026 WL 1815723, at *6 (D. Ariz. June 24, 2026) (applying the same six factors); *Gevorg*, 2025 WL 3496436, at *6 (same); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019) (same); *see also Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 850 (E.D. Va. 2020) (noting prolonged detention under § 1225(b) can become "unreasonable and constitutionally infirm" based on "a variety of factors, which generally include (1) the length of Petitioner's detention; (2) the length of any delays attributable to the Petitioner; and (3) his likelihood of ultimately being ordered removed").

Thus, the undersigned finds the six-factor test that Judge Russell applied in *Jalloh* appropriate for determining whether Petitioner's detention under § 1225(b)(1)(B)(ii) is constitutionally unreasonable. *See also Singh v. Warden*, No. CIV-26-1613-J, 2026 WL 2572834, at *6 (W.D. Okla. Aug. 31, 2026) (R&R) (recent recommendation by Magistrate Judge Stephens to apply the same six-factor test in another habeas matter involving prolonged detention under § 1225(b)(1)(B)(ii)); *Tabatabaei v. Figueroa*, No. CIV-26-1048-G, 2026 WL 2323603, at *6-8 (W.D. Okla. Aug. 11, 2026) (R&R) (same). The undersigned now considers each of the six factors in turn.

**1. Total length of detention to date**

Petitioner has been detained since October 30, 2024, which currently amounts to more than 22 months of continuous detention. (Doc. 1, at 4; Doc. 8, at 1). In analogous cases where petitioners were detained for similar periods of time, courts in this Circuit have concluded the length-of-detention factor weighed in favor of finding a due process

violation. *See, e.g.*, *Ali X*, 2026 WL 1857825, at *5 (finding a detention "period exceeding 21 months" to be "unreasonably prolonged"); *Marquez*, 2026 WL 1557180, at *2 (finding an "ongoing detention of more than seven months . . . constitutionally excessive"); *Mardanpour*, 2026 WL 963164, at *8 (finding an "ongoing detention exceeding fourteen months" to be constitutionally excessive); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019) (R&R) (noting "Petitioner has been in detention [under § 1225(b)(1)] for approximately 17 months, which is a very long time," and recommending such "length of petitioner's detention strongly favors granting him a bond hearing"), *adopted*, 385 F. Supp. 3d at 1106-07. Thus, this first factor weighs heavily in Petitioner's favor.

**2. Likely duration of future detention**

The next factor is the likely duration of Petitioner's future detention. "Courts examine the anticipated duration of all removal proceedings—including administrative and judicial appeals—when estimating how long detention will last." *Jalloh II*, 2023 WL 3690259, at *5 (citation modified). An immigration judge has denied asylum and ordered Petitioner removed, but has also granted withholding of removal, (Doc. 8, at Ex. 4), and Petitioner has appealed that decision to further seek asylum. (*Id*. at Ex. 5; Doc. 1, at 5).

"Petitioner's appeal to the BIA and, if unsuccessful there, to the Tenth Circuit Court of Appeals, could take years." *Mardanpour*, 2026 WL 963164, at *6; *see also Ali X*, 2026 WL 1857825, at *5 ("Although DHS's appeal remains pending before the Board of Immigration Appeals, no decision has yet been issued. Thus, Petitioner's detention may continue for a substantial and presently indeterminate period."); *Banda*, 385 F. Supp. 3d at

1119 (“Petitioner only recently filed his appeal of the IJ’s removal order with the BIA. If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer.”). “Where either party may appeal an immigration court’s decision, this factor weighs in favor of the petitioner.” *Jalloh II*, 2023 WL 3690259, at *5 (citation modified). Because Petitioner’s appeals process may take several months or even longer, this factor also favors granting him a bond hearing.

**3. Conditions of detention**

The next factor considers “whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing.” *Id.* (citation omitted).

Petitioner alleges he has been detained “in conditions meant for criminal punishment . . . in three different facilities in a jail setting.” (Doc. 1, at 6). He is currently detained at Diamondback Correctional Facility, which ICE’s website describes as a “jail.” *Diamondback Correctional Facility: Sending Items to Detainees*, U.S. Immigration & Customs Enforcement, https://www.ice.gov/detain/detention-facilities/diamondback-correctional-facility (noting “[t]he jail will not accept certain items through the mail”) (last accessed Sept. 8, 2026). Where a non-citizen is “confined in a secure detention facility and is subject to significant restraints on his liberty,” his confinement “is akin to criminal incarceration.” *Ali X*, 2026 WL 1857825, at *5. Thus, this factor also weighs in Petitioner’s favor.

**4. Delays in the removal proceedings caused by Petitioner**

The next factor is whether Petitioner has delayed the removal proceedings against him. "In considering delays in the removal proceedings caused by the detainee, courts should be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Jalloh II*, 2023 WL 3690259, at *5 (citation modified). However, a non-citizen's mere exercise of his legal rights is not sufficient to weigh against him; instead, courts look for evidence of "bad faith or obstructive conduct." *Mbalivoto*, 527 F. Supp. 3d at 851; *see also Ali X*, 2026 WL 1857825, at *5 ("Petitioner's pursuit of asylum and defense against removal do not constitute unreasonable delay and were exercised as rights afforded to him under the immigration laws."). As such, this factor is neutral. *See Ali X*, 2026 WL 1857825, at *5 (finding factor "neutral" where any delay in a petitioner's removal proceedings was not attributable to him).

**5. Delays in the removal proceedings caused by the government**

Next, the Court must consider whether any delays in the removal proceedings were caused by the government. Petitioner does not allege any specific action or conduct in bad faith by Respondents to cause delays in his proceedings. While the undersigned is sensitive to challenges Respondents face in processing a high volume of removal proceedings and recognizes the sheer number of cases before the Immigration Courts may result in inevitable delays, those delays are ultimately attributable to the government. Nevertheless, because there is no evidence of "lack of diligence or bad faith," *Mbalivoto*, 527 F. Supp.

3d at 851, on the part of Respondents, this factor is also neutral.

**6. Likelihood that removal proceedings will result in a final order of removal**

Finally, the Court must consider whether, at the conclusion of his removal proceedings, Petitioner will actually be removed. "The more likely that the alien will be removed, the longer the detention that will be deemed reasonable." *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881, 2025 WL 3653158, at *12 (D. Colo. Dec. 17, 2025) (citation modified). Petitioner does not allege it is unlikely that he will be removed. In evaluating this factor, courts consider the extent to which either the petitioner or the government has prevailed in Immigration Court. Here, an immigration judge has denied asylum and ordered removal to the Democratic Republic of the Congo but has also granted withholding of removal under the INA. (Doc. 8, at Ex. 4). Petitioner has appealed because he wishes to be granted asylum. (Doc. 1, at 5). Petitioner's likelihood of removal depends on the success of his appeal to the BIA and beyond. However, the Court should decline to reach these issues in determining the likelihood of his removal. *See Vizguerra-Ramirez*, 2025 WL 3653158, at *12 ("The Court . . . respectfully declines to predict the outcome of [petitioner's] petition for review."); *Vital*, 2026 WL 1965075, at *5 ("[T]his Court makes no attempt to weigh in on that matter."). The parties have not provided persuasive arguments or evidence concerning the likelihood of the appeal's success and thus this factor is neutral. *See Kasalica v. Choate*, No. 24-cv-02664-NYW, 2024 WL 6992210, at *6 (D. Colo. Nov. 14, 2024) (finding the sixth factor neutral when the parties did not show the likely result of petitioner's asylum claim).

**7. Conclusion**

In weighing these six factors, the undersigned finds that Petitioner's continued detention of more than 22 months without an individualized bond hearing has become unreasonable and in violation of his due process rights. Notably, in *Jalloh III*, Judge Russell found a violation of the petitioner's due process rights after concluding the first three factors weighed in favor of the petitioner, factors four and five were neutral, and the sixth factor weighed against the petitioner. 2023 WL 3690252, at *2. Like Petitioner's case, Judge Russell found it relevant in *Jalloh* that the petitioner there had "been detained for approximately 19 months in a criminal correctional facility and that it may be several more months before all appeals are exhausted." *Id. Accord De Zarate v. Choate*, No. 23-CV-571, 2023 WL 2574370, at *5 (D. Colo. Mar. 20, 2023) (finding, for a petitioner detained for more than 14 months under § 1226(c), that even when "factors one, two, and three weigh in favor of [petitioner]; factors four and five are neutral; and factor six weighs against [her]," the factors "when considered together" favor petitioner and a finding that her due process rights had been violated) (citation modified).

Where a non-citizen has been detained for an unconstitutional length of time in violation of due process, as Petitioner has, he is entitled to an individualized bond hearing. "Continued detention requires an individualized bond hearing before an Immigration Judge to comport with due process." *Jalloh III*, 2023 WL 3690252, at *2 (citation modified); *see also Ali X*, 2026 WL 1857825, at *6 ("Petitioner's detention has become constitutionally unreasonable and continued detention without any individualized custody determination violates procedural due process."); *Khasanova*, 2026 WL 1815723, at *8 ("Where a

noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ."). Accordingly, the Court should order Respondents to provide Petitioner with an individualized bond hearing before a neutral immigration judge.[7]

## V. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, (Doc. 1), be **GRANTED in PART.** The undersigned recommends that the Court order Respondents to provide Petitioner an individualized bond hearing within seven days or else to release him. The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within three business days of the Court's order.

**The undersigned advises the parties of their right to object to this Report and Recommendation by September 16, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[8] The undersigned further advises the parties that failure to make timely

[7] The majority of Judges in this District have either (a) declined to reach the issue of whether due process requires the government, rather than the non-citizen, to carry the burden of proving dangerousness or flight risk at a § 1226(a) bond hearing, *see e.g., Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 (W.D. Okla. Apr. 30, 2026) (Judge Russell "declin[ing] to specify or alter the burden of proof at this stage.") (citation omitted); or (b) determined that due process does not require the burden to shift to the government, *see, e.g., Pupo Socarras v. Figueroa*, No. CIV-26-0571-HE, 2026 WL 2100499, at *1 (W.D. Okla. July 21, 2026) ("[T]he Fifth Amendment Due Process clause is not offended by leaving the burden of proof on the non-citizen in a § 1226(a) bond hearing.").

[8] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time

objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 9th day of September, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

---

"does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").